## Scranton Saengerrunde License

544

*Walter W. Kohler*, for appellant.

*Peter P. Jurchak*, Special Deputy Attorney General, for Liquor Control Board.

ROBINSON, J., September 13, 1948.—On June 16, 1948, the Pennsylvania Liquor Control Board revoked the club liquor license, no. C-2347, issued to Scranton Saengerrunde for the premises, which licensee owns, at 631 Prospect Avenue in the City of Scranton. The appeal in this case was filed July 2, 1948, and on petition of appellant this court on July 29, 1948, in an order by Hoban, P. J., directed the issuance by the board of a club liquor license for the year 1948, pending the disposition of the appeal.

Acting on the complaint of an expelled member,[1] the said board caused an investigation to be made of the licensed premises and the business conducted thereon. Enforcement officers made three visits to the clubrooms in September 1947, and an enforcement auditor examined the records of licensee for the period beginning January 1, 1947, and ending October 1, 1947.

We shall dispose of the matters appearing from the evidence in the order treated by the findings of the Liquor Control Board.

The board found that the licensed organization sold liquor and other drinks to nonmembers. The enforce-

---

[1] A convicted criminal whose record was introduced into evidence.

ment officers testified that on each visit they were able to and did purchase whisky and beer at the bar conducted in appellant's clubrooms. The testimony discloses that on each occasion there were a large number of persons (from 50 to 100) present in a space approximately 40 feet square. The officers did not disclose their identity as enforcement officers, but posed as members of the club and mingled with the crowd on the premises. On busy occasions it may be possible for nonmember enforcement officers to provoke such violation in a licensed club, when they would be refused admission and the purchase of liquors under less strenuous circumstances. However, the violation of section 411 of the Pennsylvania Liquor Control Act of November 29, 1933, P. L. 15, 47 PS 744-411, is established with the sale. The burden is upon licensee, privileged as he is under our system of liquor control, to refrain from committing or participating in the acts prohibited by the statute. The intent, lack of knowledge, or mistake on the part of licensee is not material in this class of violation of prohibited acts: Commonwealth v. Borek, 161 Pa. Superior Ct. 200. Where, as in this case, there is no evidence of sales of liquor to nonmembers other than those procured by the agents of the board, this fact ought to be considered in mitigation of the penalty imposed. Nevertheless, we find, as did the board, that the licensed organization sold liquor to nonmembers.

The evidence permits no finding other than the licensed organization maintained gambling devices and permitted gambling on the premises. The testimony establishes the operation of two slot machines on three different occasions and appellant admits the maintenance of the same.

We cannot find that "the licensed organization is not operated for the mutual benefit of the entire membership in that it is operated for the benefit of one Harry McDermott."

McDermott, a member and an officer of appellant corporation, had an arrangement to manage and supervise the business of the bar, by which he received, as compensation, 15 percent of the net profits of the bar for about nine months, yet his compensation averaged only $51 per month for that period.

In return McDermott attended to all the purchasing, managing and supervision of the licensed business of the club, spending a portion of his time at the club-rooms every day. The society had a similar arrangement with the secretary by which he was paid a percentage for collecting dues, and his compensation amounted to around $5 per month out of which he purchased the necessary stationery and supplies. While the percentage method of computing compensation for services, of the type here considered, is frowned upon by the Liquor Control Board, the amounts received by the officers mentioned were so pitifully small as to be ignorable, particularly when there is testimony to the effect that the practice has been discontinued. See Josco's License, 59 D. & C. 617.

We do not agree that appellant failed to fulfill the purpose of its charter. The Scranton Saengerrunie, as a translation of the name implies, was originally organized as a singing society. It was incorporated by the Court of Common Pleas of Lackawanna County in 1882 for the stated purpose of promoting "German song, language and customs and a taste for the arts and sciences among Germans". Viewed in the light of the last three decades of world history, the nonfulfillment of some of the purposes of the charter is understandable. Articles of incorporation of nonprofit corporations (corporations of the first class under prior law) are generally broadly drawn. The securing of wide corporate authority in the first instance obviates the necessity of future amendments to the charter. It is seldom that all the powers given to any corporation are utilized at all times. Appellant was incorporated origi-

nally as a singing society and it is uncontradicted that singing activities are still conducted by it.

Neither do we find that there was a failure to adhere to the "by-laws" of the society. The minutes of appellant corporation show that the "by-laws", reviewed by the enforcement examiner, were read at a meeting held in 1945, but were never adopted until sometime after the investigation was closed. Until the said "by-laws" were adopted by a majority vote of the entire membership present at a meeting called for that purpose they were not effective to govern the conduct of the affairs of the corporation. Even so, it is apparent some of these "by-laws" were drawn to safeguard as far as possible the money of the corporation and were not intended to govern every action of the officers and employes. For instance, the "by-laws" requiring all bills to be approved by the president and secretary before payment, and all expenditures of the society to be made by check, would preclude the purchase by appellant of liquor and malt beverages, the payment for which, as is well known, must be in cash.

It is apparent no finding can be made that appellant failed and neglected to keep complete and truthful records covering the operation of the license. We note the Liquor Control Board did not hold improper the form in which the records were kept.[2] The testimony of William J. Boyle, enforcement auditor for the board, discloses he was able to determine that licensee had an income for the period examined of $13,165.30, of which $8,892.43, or 67.52 percent of the total income, was from the sale of beer and liquor and that he was able to determine the total expenditures. He testified that he "got all the figures he wanted". This witness made a complete and thorough examination of the records, found a discrepancy in the balances of only $9.05, and

---

[2] There is testimony that a system of bookkeeping designed to meet the approval of the board has been installed.

he testified that was a "mistake that anybody could make". There is no evidence that items of income or expenditures were omitted from or falsely inserted in licensee's books and records, and this together with the testimony of the enforcement auditor is conclusive that the finding of the board on this subject was incorrect.

We, then, after hearing the matter de novo have in four factual instances found differently than the board below. In this situation what was said in Pacewicz Liquor License, 152 Pa. Superior Ct. 123, 128, is applicable:

"Of course, if the court, as a fact-finding body, disagrees with the findings of fact of the board, it must have the authority to change the penalty, if any, to fit the violation thus found. For example, if the court below had found no violation of the law against selling intoxicating liquors on Sunday but only a violation of the regulation of the board relating to dancing, it might very properly have reduced the penalty to suspension instead of revocation."

See Mami's Liquor License Case, 144 Pa. Superior Ct. 285, Yatsko's Liquor License Case, 149 Pa. Superior Ct. 97, and Lehigh Valley Brewery Workers Home Assn. Liquor License, 154 Pa. Superior Ct. 141.

We are of the opinion that the penalty imposed by the board should be changed to fit the violations here found.

Now, September 13, 1948, the order of the Pennsylvania Liquor Control Board, entered June 16, 1948, revoking club liquor license no. C-2347 issued to the Scranton Saengerrunie is reversed, and:

It is ordered and decreed that the said club liquor license be and is hereby suspended for a period of 45 days without the privilege in licensee to make an offer in compromise of such suspension as provided for in section 410 of the Liquor Control Act. This order of suspension is to be effective in 10 days from the date hereof.